# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

---

### No. 17-35315

### Memorandum Disposition Issued March 8, 2023
### M. Margaret McKeown, Eric D. Miller, and Salvador Mendoza, Jr.
### Circuit Judges

---

KIRK J. NYBERG,

*Plaintiff-Appellant*,

v.

PORTFOLIO RECOVERY ASSOCIATES LLC,

*Defendants-Appellees*.

On Appeal from the United States District Court
for the District of Oregon, Portland
No. D.C. No.: 3:15-cv-01175-PK
Hon. Paul Papak

---

## PETITION OF APPELLANT'S NYBERG
## FOR REHEARING EN BANC OR BY PANEL

---

Bret Knewtson, OSB 03355
Bret Knewtson, Esq
3000 NE Stucki Ave STE 230
Hillsboro OR 97124
Telephone: (503) 846-1160
bknewtson@yahoo.com

Mark G Passannante OSB 944035
Broer & Passannante PS\
904 NE Hazel Dell Ave
Vancouver WA 98665
Phone: (503)294-0910
mark@broerandpassannante.com
Attorneys, Appellant Kirk Nyberg

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................ iii

BASIS FOR EN BANC REHEARING .......................................................1

BACKGROUND FACTS ...........................................................................4

I.     THE PANEL INCORRECTLY IMPOSES "MATERIALITY" AS IF IT WAS AN ELEMENT OF AN FDCPA CLAIM. .............................6

II.    THE FALSITY ARGUMENT –ASSERTING THAT 15 U.S.C. § 1666 PRESCRIBED THE TIME ALLOWED TO DISPUTE A STATEMENT WAS MATERIALLY FALSE. ...................................9

      A.    The cardholder agreement did not independently require a cardholder to dispute a statement in 60 days. ..........................10

      B.    Violations of the FDCPA are not limited to false statements of what is owed. ...........................................................................12

III.    AS A MATTER OF LAW, PRA'S COLLECTION CLAIM WAS A SHAM THAT IT COULD NOT PROVE. ..........................................13

IV.    ASSERTING THE SHAM CLAIM IS A PER SE VIOLATION OF THE FDCPA. ......................................................................................15

CONCLUSION .........................................................................................18

CERTIFICATE OF COMPLIANCE .......................................................19

CERTIFICATE OF SERVICE .................................................................19

# TABLE OF AUTHORITIES

## Cases

*Afewerki v. Anaya Law Grp.*,
  868 F3d 771 (9th Cir 2017) ............................................................8, 16

*Anastasoff v. United States*,
  223 F.3d 898 (8th Cir 2000) ...........................................................2

*Bjornsdotter v. Suttell & Hammer, P.S.*,
  No. 20-35298 (9th Cir. Dec. 27, 2021) .........................................15

*Boucher v. Fin. Sys. of Green Bay, Inc.*,
  880 F.3d 362 (7th Cir. 2018) ........................................................12

*Clark v. Capital Credit Collection Serv*,
  460 F.3d 1162 (9th Cir. 2006) ........................................................6

*Cooley v. Roman*,
  286 Or. 807 (1979) .........................................................................7

*Del Monte Meat Co. v. Hurt*,
  277 Or. 615 (1977) ........................................................................11

*Donohue v. Quick Collect, Inc.*,
  592 F.3d 1027 (9th Cir. 2010) ............................................... 12, 16

*Hahn v. Triumph Partnerships LLC*,
  557 F.3d 755 (7th Cir. 2009) ...........................................................3

*Hart v. Massanari*,
  266 F.3d 1155 (9th Cir.2001) ..........................................................2

*Hearn v. W.Conference of Teamsters Pension Tr. Fund*,
  68 F.3d 301(9th Cir.1995) ...............................................................7

*Kaiser v. Cascade Capital, LLC*,
  989 F.3d 1127 (9th Cir. 2021) ......................................................7, 8

*Miller v. Javitch, Block & Rathbone*,
  561 F.3d 588 (6th Cir.2009) ....................................................... i, 3

*Moser v. Mark*,
  223 Or. App. 52 (2008) .................................................................13

iii

*Portfolio Recovery Assocs. v. Sanders*,
  366 Or. 355 (2020) ........................................................................13

*Tourgeman v. Collins Fin. Servs., Inc.*,
  755 F.3d 1109 (9th Cir. 2014) ........................................................8

*Vanbebber v. Plunkett,*
  26 Or. 562 (1895) ..........................................................................16

*Warren v. Sessoms & Rogers, P.A.*,
  676 F.3d 365 (4th Cir. 2012) ...........................................................3

**Federal Statutes**

15 U.S.C. § 1666 ...........................................................................9, 10
15 U.S.C. § 1692d ............................................................................11
15 U.S.C. § 1692e .............................................................................6
15 U.S.C. § 1692f .......................................................................11, 15

**State Rules**

ORCP 18A .......................................................................................13

## BASIS FOR EN BANC REHEARING

En Banc rehearing of this Court's decision in *Nyberg v. Portfolio Recovery Associates, LLC*, memorandum decision (9th Cir. July 6, 2023) (memo) is necessary because the panel has refused to address the merits of the appeal, reached conclusions not supported by the summary judgment record and demonstrating an abject disregard of the record and controlling precedent.[1] FRAP 35 and 40 assume the panel attempted to follow established precedent or reached conclusions supported by the record. They did not. The panel's conclusion that asserting false statements in a collection complaint was not a material violation of the FDCPA disregards controlling precedent and conflicts with other Circuits' precedent.

The panel's acceptance of PRA's use of abusive collection actions is an issue of great importance as it undermines the integrity of our legal system through the use of unpublished opinions that prevent public scrutiny of the decision by falsely characterizing the record and stating legal conclusions about the law without the analysis that if done would require the opposite conclusion.

------

[1] Memorandum attached.

1

The panel's decision could not survive as a published opinion that has to conform to the record and the law. The unpublished opinion abuses the principle of an independent judicial branch that was intended to ensure the unbiased and neutral application of the law. *Anastasoff v. United States*, 223 F.3d 898, 904 (8th Cir 2000), *opinion vac'd on reh'g en banc,* 235 F.3d 1054 (8th Cir 2000). By declaring that the memorandum cannot be mistaken as a decision that applies the law, the panel frees itself from the obligation to follow the law. *Compare*, *Hart v. Massanari*, 266 F.3d 1155, 1160 (9th Cir.2001) (Kozinski, J.) (holding similar rule constitutional because writing opinions is hard work and of course it would be cause for alarm if judges ever used the opportunity to issue unpublished opinions to disregard the law). The fact that it is unpublished and of no consequence to anyone on the Circuit with a vote is why none will heed the alarm raised by Knewtson who will be professionally hung for making "unprofessional" accusations that the panel's memorandum is in bad faith.

The case matters. The debt resulted from using a credit card, a liability that impacts millions of consumers. Nearly every FDCPA case involves the collection of credit card debt, as does nearly every collection case filed in state court. PRA's use of a sham collection claim to enforce that liability is fraud and takes advantage of the lack of consumer representation in debt collection. Correctly resolving this

appeal would illuminate the practice and excise it, ensuring unrepresented consumers are not disadvantaged by the use of pretense in collection actions.

The panel relies on "materiality," which is that a technically false statement is not misleading if the false information cannot mislead the consumer. Or as the 7th characterized materiality, a false statement about the color of paper used in a collection dun is not actionable. *Hahn v. Triumph Partnerships LLC*, 557 F.3d 755, 757 (7th Cir. 2009), *see also Donohue v. Quick Collect, Inc.,* 592 F.3d 1027, 1033 (9th Cir.2010); *Miller v. Javitch, Block & Rathbone,* 561 F.3d 588, 596 (6th Cir.2009), *Warren v. Sessoms & Rogers, P.A.*, 676 F.3d 365, 374 (4th Cir. 2012), *as amended (Feb. 1, 2012) abrogated on other grounds by Campbell-Ewald Co. v. Gomez*, 577 US 153 (2016).

False statements about the debt's character, amount, and legal status are per se, violations of the FDCPA because Congress made it so. 1692e(2). A sham collection claim, like PRA's, may get the amount right, but any false statement about the character or legal status of the debt asserted to persuade anyone that the debt is owed necessarily violates the FDCPA.

There are no immaterial facts or statements in a collection complaint that can be disregarded as technically false because it amounts to complaining about the color of the paper the complaint is printed on. If what PRA alleged was within the pale of ethical debt collection and does not concern the FDCPA and Nyberg is

3

flat wrong this Circuit should explain why and publish the opinion. Gaslighting is not among the best traditions of the bench.

## BACKGROUND FACTS

In 2010, Nyberg defaulted on a Capital One credit card account. ER-132. Capital One charged off the account in March of 2011 in the sum of $834. ER-148. Capital One continued to send statements and add contract interest until August 2013 for a final balance of $976.57 ($977). ER-162. PRA bought the debt and tried to get Nyberg to pay $977. ER-172. PRA then repeated the demand for $977 and reporting the debt was transferred to the litigation department. ER-173. About 40 days after PRA filed its collection action seeking $834, because Nyberg and Capital One "agreed" that was owed, PRA reported to the credit reporting agencies Nyberg owed $977. ER-169, 175, ER-266 (FAC, ¶ 34).

PRA alleged in support of an implied-in-law account stated claim, for $834, that:

> The Original Creditor mailed statements to Defendant, showing all charges, credits, payments, fees and finance charges incurred during each preceding month while the Account was open. Defendant did not object or otherwise dispute said statements within the time prescribed by U.S.C.§ 1666. The Original Creditor and Defendant thereby established a stated balance of Defendant's Account."

ER-170 (Collection Complaint ¶ 3). PRA falsely suggested a mutual accounting was established: "By failing to object or otherwise dispute the statements mailed to Defendant, Defendant agreed to pay the stated balance of the

Account, and Plaintiff and Defendant came to an accounting." ER-170 (¶ 7 collection complaint). And "Defendant impliedly promised to pay the Original Creditor the total sum as described herein." ER-171 (Collection Complaint ¶ 9). And "Defendant, by failing to object or otherwise dispute the stated balance of the account, and by becoming indebted to the Original Creditor for the total sum stated herein, and by impliedly agreeing to pay the total sum, but in failing to pay the total sum, an account stated has been established." ER-171 (Collection Complaint ¶ 11).

> In Nyberg II, PRA explained its claim:
>
> That federal statute governs the time in which creditors are proscribed in accepting communications from debtors disputing bills sent by creditors. The statute states that the debtor has 60 days in which to communicate to the creditor a dispute of the stated amounts in the bill/invoice/statement. 15 USC §1666(a). [ . . .] Capital One provided Defendant with repeated billing statements and a final accounting showing the final balance at the time the account was charged off [. . .]. There is no evidence that Defendant ever objected to the balance in the final or any statement. [ . . .] Thus, Capital One and Defendant came to an accounting for the specified sum of $834.25 plus post-judgment interest and costs.
>
> ER-167-68 (PRA collection memo). In other words, PRA claimed Capital

One sent the "final" statement with the intent to establish a "final accounting" that Nyberg owed $834 and because 15 U.S.C. § 1666, the Fair Credit Billing Act (FCBA) required Nyberg to dispute the statements, including the balance, in the time the FCBA "prescribed" with the consequence of waiving the right forever and

that established he had admitted the balance was correct and the law would imply that he had promised to pay that sum under the claim of account stated.

None of which is true. Opening Brief (OB) at 1-55. Especially, the undisputed fact that Capital One sent the statements to comply with the contract, federal and state law, keep Nyberg informed of the account activity and any change of terms, and never to enter into a new agreement. OB at 43-46, ER-179-80. Obvious facts that prove PRA's account stated claim was a sham if one knows the law. The true character of the debt remained that of breach of the cardholder agreement's obligation to pay as agreed. Not an admission to a sum certain implied by Nyberg's silence in the face of a communication sent to mutual account for each other's liabilities after the completion of the parties' dealings. OB at 2-17. The debt's legal status was not owed, as the Virginia statute of limitations extinguished it. OB at 50-55.

## I.  THE PANEL INCORRECTLY IMPOSES "MATERIALITY" AS IF IT WAS AN ELEMENT OF AN FDCPA CLAIM.

Materiality may be shorthand for avoiding absurd results but first the absurdity of enforcing the statute as written must be demonstrated. *Clark v. Capital Credit Collection Serv*, 460 F.3d 1162, 1168-70 (9th Cir. 2006) (discussing the rules of statutory interpretation and the FDCPA). Reply Brief (RB) at 10-13. The FDCPA proscribes false statements about the character, amount and legal status of a debt (15 U.S.C. § 1692e, e(2)(A)), false threats (§ 1692e(5)), and the use of false

6

statements or deceptive means to collect a debt (§ 1692e(10)). Nothing is absurd about requiring truthful statements about the debt's character, amount and legal status as required by the act. *Hearn v. W.Conference of Teamsters Pension Tr. Fund*, 68 F.3d 301, 304 (9th Cir.1995) ("Only where a sensible result isn't reachable may we resort to the drastic step of ignoring ... statutory language ....").

Relying on *Donohue*, the Court found that Nyberg did not demonstrate that the statement of what he owed impacted his ability to make intelligent choices. Memo at 2-3. The panel erred by focusing on the amount owed, not the impact of the false allegations and sham claim asserted by PRA. As held by this court in *Kaiser*, a debt collector's false representation, even by implication that a debt is legally enforceable violates the FDCPA. *Kaiser v. Cascade Capital, LLC*, 989 F.3d 1127 (9th Cir. 2021) (After expiration of the statute of limitations, a debt collector may not imply that a time barred debt remains legally enforceable).

If one assumes, as the panel did, that it was false to assert the FCBA required Nyberg to object, within 60 days, to a particular statement reflecting the amount PRA sued upon, then no account stated claim exists because there is no duty that is independent of the contract (assuming arguendo the contract imposed such an obligation) that can imply agreement to the balance. Memo at 3. *Cooley v. Roman,* 286 Or. 807, 812 n. 3 (1979), *overruled on other grounds by Assoc. Unit Owners of Timbercrest Condo. v. Warren*, 352 Or. 583 (2012) (must prove

7

agreement on final sum or claim fails and cannot be saved by "you owed the debt anyway"). *Supra*. If the account was never stated, then the liability PRA attempted to enforce was fictitious and the real liability was governed by the cardholder agreement and time barred. *See Kaiser, supra*. PRA does not dispute that fact. Truth was an absolute defense to every claim filed by PRA. Applying the FDCPA to forbid requiring a consumer to disprove a sham or time-barred claim is not an esoteric application of the meaning of false, unfair or deceptive. *Kaiser,* 989 F.3d at 1130. OB at 29-34, RB at 10-15 (explaining the deceptiveness and unfairness of the claim).

Contrary to the panel's conclusion nothing in the statute requires Nyberg to prove PRA's false statement affected him personally. Memo at 2-3, 5. *Afewerki v. Anaya Law Grp.*, 868 F3d 771, 776 (9th Cir 2017). But it did impact him, as he had to choose between allowing a default judgement against him for the sham claim whose true legal status was a time-barred breach of contract claim or finding a lawyer to defend him. The FDCPA prohibits collection conduct that puts a consumer in such a position and with those consequences. *Tourgeman v. Collins Fin. Servs., Inc.*, 755 F.3d 1109, 1123 (9th Cir. 2014) (misidentifying the original creditor in collection complaint could impede consumer by creating confusion about circumstances relevant to assessing liability and risk, aka settlement). RB at 10-15.

## II. THE FALSITY ARGUMENT –ASSERTING THAT 15 U.S.C. § 1666 PRESCRIBED THE TIME ALLOWED TO DISPUTE A STATEMENT WAS MATERIALLY FALSE.

The District Court and the panel ignores everything Nyberg has pointed out about why PRA's allegation was false and why the claim was a sham and instead uses the guise of "materiality" and the power to misrepresent the record to declare that, "[E]ven if PRA's state-court complaint falsely suggested that the FDCPA permitted Nyberg only 60 days to object to the credit-card statement, Nyberg does not identify how this communication was materially misleading, when Nyberg's credit-card holder agreement independently required that he make any objections within 60 days." Memo at 3 (citing *Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1033 (9th Cir. 2010)). If the truth lay in the cardholder agreement, PRA had to disclose that truth to give the consumer the whole picture and to evaluate that "truth." PRA did not.

Neither PRA's allegations nor the agreement mentions 60 days. Neither the FCBA nor the agreement require a cardholder to raise or waive a billing error dispute and even if they did the definition of a billing error does not extend to finance charges, fees or a debate about the balance. OB at 34-42. PRA's false statement had nothing to do with accurately identifying the time the FCBA allows a cardholder to invoke its dispute process and everything to do with falsely identifying that the FCBA set the statute of limitations on disputes with the effect

9

of establishing that not disputing a balance in the time allowed was an admission that the balance was accurate and owed.

### A. The cardholder agreement did not independently require a cardholder to dispute a statement in 60 days.

Nyberg has conclusively established that the 15 U.S.C. § 1666 did not apply to the statement PRA relied upon as stating the account and had nothing to do with a dispute about the balance of an account. OB 1-55. PRA has never challenged Nyberg's analysis and nor has the panel. Instead of relying on legal authority to disprove Nyberg's analysis, PRA argued:

> Nyberg's section 1666 argument misses the mark. His credit card contract with Capital One imposed a contractual obligation to dispute within 60 days, consistent with the time period set forth in section 1666. There is no harm in reminding the debtor in a collection complaint of that contractual obligation to dispute the debt within 60 days. A duty is a duty, be it contractual or statutory.

Answering Brief (AB) at 40, *compare* OB at 36-37, RB at 27-29. That is PRA's only justification for why it was not a violation of the FDCPA to falsely allege that § 1666 required a cardholder to dispute the balance reported in a statement with the consequence of admitting the balance was owed in the absence of timely dispute.

The agreement only requires what the FCBA requires, which is nothing. It does not even mention a deadline for disputes.

> You must inspect each Statement you receive and tell us about any errors or questions you have as described in the "Billing Rights

Summary" part of your Statement and other Truth in Lending Disclosures. If you do not notify us as provided in those disclosures, we may assume that all information in the Statement is correct.

ER-113 (disputed transactions). The clause expressly limits the

consequences of a cardholder's failure to identify incorrect information in a

statement to just an assumption by Capital One that it is correct. That assumption

has no legal consequences. OB at 51-55, RB at 27-28. PRA would have violated

the FDCPA if it had falsely stated that the contract required Nyberg to dispute the

balance within 60 days of receipt or be deemed to have admitted liability for the

balance and waived the right to challenge it. 15 U.S.C. § 1692f and 15 U.S.C. §

1692d.

In relying on the cardholder agreement as negating PRA's false statements

about the purported need to dispute balances or be deemed to admit them the panel

fails to acknowledge the contract cannot be the source of an independent promise

to pay a final sum which is the crux of an account stated. To say that falsely stating

a fact that is the crux of the claim alleged against a consumer defendant is 'meh,'

not material, defies logic and common sense.

In fact, an account stated will involve at least one further transaction: the making of the new promise. The necessity of an independent promise, either expressed or implied, is further recognized in *Sunshine Dairy v. Jolly Joan*, 234 Or 84, 85, 380 P2d 637 (1963).

*Del Monte Meat Co. v. Hurt*, 277 Or. 615, 616, (1977). PRA could not use

the cardholder agreement as the source of its alleged cardholder duty to raise it or

waive it as that promise was part of the original transaction and not an independent promise. PRA had to bring a breach of contract claim to prove the contract consequences of failing to dispute a balance. That remedy was time-barred. OB at 50-55. Nor does PRA challenge Nyberg's assertion that the contract claim was barred by the Virginia statute of limitations for unwritten contracts. Answer Brief (AB) at 48-49, OB at 50-54.

### B. Violations of the FDCPA are not limited to false statements of what is owed.

Relying on *Donohue*, the panel found that "Even if we assume PRA made a false statement in its debt collection notice, Nyberg does not demonstrate that the statement of what he owed "affected [his] ability to make intelligent decisions" about how to respond to the collection effort." Memo at 2-3 (citing *Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1033 (9th Cir. 2010)). Untying the gorgon's knot of whether the balance of a credit card debt is correctly assessed is impossible. OB 19-22.

The $977 proves Capital One and Nyberg never agreed to state the account in a final sum of $834; rather, Capital One was enforcing the agreement. Had PRA defaulted Nyberg, it would have proved that the $977 was not owed and only $834 was owed. *Boucher v. Fin. Sys. of Green Bay, Inc.*, 880 F.3d 362, 370 (7th Cir. 2018) (asserting a fixed debt could be more violates FDCPA). Nothing is absurd about holding PRA liable for falsely reporting that Nyberg owed $977 when it

12

alleged, he only owed $834. Actions speak louder than words, especially legal actions, and reporting Nyberg owed $977 falsely implied PRA could collect more than its action demanded.

### III.    AS A MATTER OF LAW, PRA'S COLLECTION CLAIM WAS A SHAM THAT IT COULD NOT PROVE.

PRA argued, "Under *Sanders*, PRA was required to prove, *inter alia*, that Capital One intended to agree to a "final accounting" between the parties when it sent Nyberg the monthly statement that formed the basis of the alleged account stated." AB at 11, 37, 46 (claiming *Portfolio Recovery Assocs. v. Sanders*, 366 Or. 355 (2020) clarified what PRA needed to plead and PRA could just amend). PRA conceded it failed in that task but has never identified what it would allege to prove mutual intent to reach an agreement on a final sum. AB at 37.

Oregon requires a complaint to state the ultimate facts sufficient to state a claim for relief. ORCP 18A. *Moser v. Mark*, 223 Or. App. 52 (2008) (Complaint must allege facts that, if proved, will establish the right to the relief sought). PRA, as the master of its complaint, had to identify and allege the facts that, if proven, would establish Capital One intended to state the account, as in reach an agreement with Nyberg on a final sum under circumstances from which the law would imply Nyberg's failure to dispute such a communication was an admission it was correct and that it would be fair to imply by law that Nyberg had promised to pay that sum. *See Sanders*, 366 Or. at 379-80 (2020) (communication must evidence intent

13

to state the account in a final sum and a reasonable jury could find the credit card statements were not sent for that purpose).

Nyberg explained in detail why failing to dispute credit card statements could never prove mutual assent to a final sum as a matter of state law and proved Capital One did not intend to agree to a final sum or mutual accounting or to state the account by sending statements. OB at 45-46, ER-179-80. Neither the District Court, PRA, or the panel acknowledges that undisputed fact. Nonetheless, the panel asserts, "While PRA concedes that its complaint failed to plead the necessary mutual asset [sic] for account stated, that deficiency under Oregon law is not a per se violation of the FDCPA." Memo at 3.

The lack of intent did not stop PRA from falsely concluding there was an agreed upon accounting. ER-170 (¶ 7 collection complaint). It was a lie because Capital One never intended to come to an "accounting" with Nyberg, especially not by sending him statements. The one fact that a consumer needs to know is true or not when faced with PRA's complaint is whether she and Capital One agreed on the "accounting" and how that happened. It did not happen. That information is material and PRA concedes that truth torpedoes the claim.

PRA, as master of that complaint goes down with it and bears the consequences of its falsity, not the consumer. It does not matter if PRA could fix it because what PRA communicated was a per se violation of the FDCPA as it

14

falsely asserted Nyberg was liable for an admission that he owed $834 that he never made and which the law would never imply he promised to pay. That is a materially false characterization of the law, the debt, and the debt's legal status.

The character of the debt remained a contract liability for failure to pay the credit card balance as agreed. The legal status of the true liability was that it was time-barred. OB 50-55. PRA's attempt to enforce a fictitious liability violates § 1692f(1) because PRA attempted to collect "any amount . . . unless such amount is expressly authorized by the agreement creating the debt or permitted by law." The agreement creating the debt was the agreement that governed the credit card account. The agreement PRA tried to enforce was a sham. PRA silence on what facts it could have alleged to save its claim is an admission it could not.

## IV. ASSERTING THE SHAM CLAIM IS A PER SE VIOLATION OF THE FDCPA.

> Nyberg's argument that the account-stated claim was legally baseless and therefore in violation of the FDCPA also fails. A claim for account stated was recognized in Oregon law at the time PRA filed its complaint.

Memo at 3. In other words, PRA could have sued Nyberg for fraud, a tort, or any other claim if Nyberg did not dispute the amount owed and Oregon had previously recognized the claim. That is not the traditional way the merit of a claim is identified Accord, *Bjornsdotter v. Suttell & Hammer, P.S.*, No. 20-35298 (9th Cir. Dec. 27, 2021) (it's all the same claim, debtor owes money). Claims and their

proof matter. They are critical information any litigant needs to know in assessing their liability and defenses.

The panel refuses to admit that PRA misrepresented the consequences of not disputing a statement which was the principal fact that PRA's claim depended on. Why does PRA win the collection lawsuit? You snoozed, and now you lose. That is a materially false and misleading collection communication. As *Vanbebber* declared over 100 years ago, when applied to an unliquidated contract liability like a promise to pay as agreed, a nasty trick not to be entertained by our legal system.

> If such were the rule, it would be an easy matter for any claimant to convert an action for unliquidated damages, whether arising from contract or tort, into an action upon a money demand, wherein it would not be permissible to inquire into the original cause of action. Every person against whom such a claim is made would be compelled to be constantly on the alert, and make due and timely objection, in order to prevent an undue advantage being taken of him. The doctrine of an account stated cannot be carried to this extent.

*Vanbebber v. Plunkett,* 26 Or. 562, 569 (1895). Take away the false statement that the cardholder had to dispute the billing statement because the FCBA required it or the false implication that Capital One sent those statements to agree on what was owed, as in account, and what is left of PRA's sham claim? Nothing. Asserting the claim is a materially false and unfair practice. *Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1033–34 (9th Cir. 2010), *Afewerki v. Anaya Law Grp.*, 868 F3d 771, 776 (9th Cir 2017) (overstating the debt and the applicable interest rate are not "mere technical falsehoods" and especially not when done in a

16

collection action). The law universally forbids filing sham claims as unfair and sanctionable in all litigation contexts.

## CONCLUSION

The unpublished panel order should be reversed and Nyberg's motion for

partial summary judgment as to liability granted.

Date: July 28, 2023

/s/ Bret Knewtson OSB 033553
Bret Knewtson
Attorneys for Appellant Kirk Nyberg

18

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(a)(7)(C), I certify that:

This brief complies with the type-volume limitation of Fed. R. App. P. 32(c)(2) and 40-1(a) because this brief is less than 4,200 words (4,165) as calculated by Microsoft Word, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionately spaced typeface using Microsoft Word Times New Roman 14-point font.

The panel memorandum is attached.

## CERTIFICATE OF SERVICE

I hereby certify that on the below date, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

For all of the above certifications

Date: July 28, 2023

<u>/s/ Bret Knewtson OSB 033553</u>
Bret Knewtson
Attorneys for Appellant Kirk Nyberg

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT



**FILED**

JUL 6 2023

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

KIRK J. NYBERG,

     Plaintiff-Appellant,

 v.

PORTFOLIO RECOVERY ASSOCIATES, LLC,

     Defendant-Appellee.

No. 17-35315

D.C. No. 3:15-cv-01175-PK
District of Oregon,
Portland

ORDER

Before:  McKEOWN, MILLER, and MENDOZA, Circuit Judges.

The panel has voted to grant the petition for rehearing.  An Amended Memorandum Disposition is being filed simultaneously with this Order.

The petition, Dkt. No. 101, is **GRANTED**.  The court will accept a petition for rehearing or rehearing en banc of the Amended Memorandum Disposition within fourteen (14) days of the date of this Order.

**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

JUL 6 2023

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| KIRK J. NYBERG, | No.  17-35315 |
| Plaintiff-Appellant, | D.C. No. 3:15-cv-01175-PK |
| v. | |
| PORTFOLIO RECOVERY ASSOCIATES, LLC, | AMENDED MEMORANDUM[*] |
| Defendant-Appellee. | |

Appeal from the United States District Court
for the District of Oregon
Paul J. Papak II, Magistrate Judge, Presiding

Submitted December 9, 2022[**]
Seattle, Washington

Before:  McKEOWN, MILLER, and MENDOZA, Circuit Judges.

Kirk Nyberg appeals the district court's dismissal of his claims brought

under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692.  We

have jurisdiction under 28 U.S.C. § 1291 and we affirm.

---

[*]     This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]     The panel unanimously concludes this case is suitable for decision without oral argument.  *See* Fed. R. App. P. 34(a)(2).

Nyberg filed a complaint against Portfolio Recovery Associates, LLC ("PRA"), claiming that PRA violated the FDCPA by bringing a state-court action against Nyberg to collect an alleged credit-card debt. The district court granted PRA's motion for summary judgment and dismissed Nyberg's claims.

PRA contends that this case must be dismissed for lack of Article III standing. We hold that Nyberg, the party invoking federal court jurisdiction, has satisfied his burden to establish standing. *See Patel v. Facebook, Inc.*, 932 F.3d 1264, 1270 (9th Cir. 2019). Nyberg demonstrated a concrete injury by showing that he incurred attorney's fees defending against PRA's state-court action. *See TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203–04 (2021); *Czyzewski v. Jevic Holding Corp.*, 580 U.S. 451, 464 (2017).

Although Nyberg has standing, his claims were properly dismissed on summary judgment. Nyberg argues that PRA committed unfair debt collection practices by providing him false information, and by bringing an account-stated claim against Nyberg that was legally baseless and time-barred. These arguments fail as a matter of law.

Nyberg's falsity argument fails because he does not establish that the alleged falsities were material. Even if we assume PRA made a false statement in its debt-collection notice, Nyberg does not demonstrate that the statement of what he owed "affected [his] ability to make intelligent decisions" about how to respond to the

2

collection effort.  *See Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1033 (9th Cir. 2010).   Likewise, even if PRA's state-court complaint falsely suggested that the FDCPA permitted Nyberg only 60 days to object to the credit-card statement, Nyberg does not identify how this communication was materially misleading, when Nyberg's credit-card holder agreement independently required that he make any objections within 60 days.

Nyberg's argument that the account-stated claim was legally baseless and therefore in violation of the FDCPA also fails.  A claim for account stated was recognized in Oregon law at the time PRA filed its complaint.  *See, e.g.*, *Sunshine Dairy v. Jolly Joan*, 380 P.2d 637, 638 (Or. 1963); *see also Portfolio Recovery Assocs., LLC v. Sanders*, 462 P.3d 263, 275 (Or. 2020) (en banc) (subsequently confirming the viability of account-stated claims and citing cases).  It is undisputed that PRA acquired Nyberg's credit-card debt, PRA demanded payment of that debt, and Nyberg neither objected to the demand nor paid PRA.  While PRA concedes that its complaint failed to plead the necessary mutual asset for account stated, that deficiency under Oregon law is not a per se violation of the FDCPA.  *See Wade v. Reg'l Credit Ass'n*, 87 F.3d 1098, 1100 (9th Cir. 1996).  Nyberg does not identify how this deficiency rendered PRA's complaint materially false or deceptive or an unfair or unconscionable debt-collection method.  *See* 15 U.S.C. §§ 1692e–f.

Nor was PRA's collection action time-barred.  *Cf. Kaiser v. Cascade Cap.,*

LLC, 989 F.3d 1127, 1130 (9th Cir. 2021) (filing a lawsuit to collect debts that are outside the applicable statute of limitations violates the FDCPA). Because PRA's action was filed in Oregon while Nyberg's credit-card agreement was governed by Virginia law, we apply Oregon conflict-of-laws rules to determine whether the relevant Oregon or Virginia statute of limitations applied to the action. *See Sanders*, 462 P.3d at 267, 274. Since both states have a relevant connection to the dispute and neither party has identified a substantive conflict between Virginia and Oregon laws governing claims for account stated, Oregon's statute of limitations applied to PRA's action. *See id.* at 268–74. Nyberg does not contest that PRA filed its account-stated claim within Oregon's applicable statute of limitations period. Nyberg's argument that, under the concurrent *remedy* doctrine, Virginia's time bar on a breach-of-contract *claim* precludes an account-stated *claim* in Oregon is not persuasive.

The district court's order is **AFFIRMED.**

4